UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
JOSHUA SELTZER and AARON JACOB,

Plaintiffs,

-against-

CLARK ASSOCIATES LLC dba "CLARK & FOX", JOHN M. CLARK, and TERRI FERRANTE

Defendants.
-----------------------------------------------------------X

Civil Action No.

**COMPLAINT**

Plaintiff Demands
Trial by Jury

Plaintiffs by their attorneys, DeTOFFOL & ASSOCIATES, Attorneys at Law, complains of the defendants herein, alleging at all relevant and materials times and upon information and belief, as follows:

**Nature Of The Case**

Plaintiffs are attorneys and former employees of Defendant Clark & Fox, which is a law firm operated by Defendants John M. Clark and Terri Ferrante. Plaintiffs bring this action against Defendants to recover damages and remedies for their wrongful termination of employment in violation of the implied-in law obligation of a law firm to refrain from erecting or countenancing disincentives to compliance with the core rules of professional conduct, as set forth in *Wieder v. Skala*, 80 N.Y.2d 628 (Ct. of Appeals 1992), and its progeny.

Defendants further violated the Computer Fraud and Abuse Act, 18 U.S.C. 1030(a)(2)(C) and the Stored Communications Act 18 U.S.C. § 2701 by accessing one or more of Plaintiffs' computer systems - which consist of protected computers used for interstate commerce or communications - without authorization or by exceeding

authorization.

**Jurisdiction & Venue**

1. Plaintiff Joshua Seltzer, Esq., ("Mr. Seltzer") is an individual residing in the State of New Jersey.

2. Plaintiff Aaron Jacob, Esq., ("Mr. Jacob") is an individual residing in the State, City, and County of New York.

3. Defendant CLARK ASSOCIATES LLC dba "CLARK & FOX" ("Clark & Fox " or "the Firm") is a limited liability company organized pursuant to the laws of the State of New Jersey with its principal place of business at 951 Haddonfield Rd., Suite A-2B, Cherry Hill, NJ 08002 and with an additional address at 575 5th Avenue, 14th Floor, New York, NY 10017.

4. Defendant John M. Clark Esq., is an individual residing in Cherry Hill, New Jersey and is the principal owner of the Firm.

5. Defendant Terri Ferrante is an individual residing in the State of New Jersey.

6. Defendant John M. Clark was an employee, affiliate, and agent of Defendant the Firm. Defendants John M. Clark and the Firm stood in such a relationship with each other as to make each liable for the acts and omissions of the other.

7. Defendant Terri Ferrante was an employee, affiliate, and agent of Defendant the Firm. Defendants Terri Ferrante and the Firm stood in such a relationship with each other as to make each liable for the acts and omissions of the other.

8. This Court has subject matter jurisdiction predicated on federal question jurisdiction pursuant to 28 U.S.C. § 1331 based upon Plaintiffs' claims under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g) and the Stored Communications

Act 18 U.S.C. § 2701. This Court has supplemental jurisdiction of Plaintiffs' New York State Common law claims pursuant to 28 U.S.C. § 1367.

9. Venue is proper in this district under 28 U.S.C. §1391(b) and otherwise based upon the fact that a substantial part of the events or omissions giving rise to the claim occurred within the Southern District of the State of New York, and Plaintiffs were employed by Defendant within the Southern District of the State of New York.

**Preliminary Facts**

10. Mr. Jacob is an attorney admitted in New York who earned his law degree in 2018 from St. John's University School of Law, Queens, New York.

11. From July 1, 2019, until his termination on April 16, 2020, Mr. Jacob was employed as an attorney in the Firm's insurance defense and coverage litigation unit at its New York office, located at 575 5th Avenue, 14th Floor, New York, NY 10017.

12. At all times during Mr. Jacob's employment with the Firm, his performance, including without limitation as measured by his billable hours, met or exceeded the Firm's reasonable expectations.

13. At no point in his tenure did Mr. Jacob receive any negative performance reviews regarding his billable work for the Firm's clients.

14. Mr. Seltzer is an attorney admitted in New York who earned his law degree in 2004 from Benjamin N. Cardozo School of Law, New York, New York.

15. From early 2016 until his termination on April 9, 2020, Mr. Seltzer was employed as a senior attorney in the Firm's insurance defense and coverage litigation unit at the Firm's New York office, located at 575 5th Avenue, 14th Floor, New York, NY 10017.

16. At all times during Mr. Seltzer's employment with the Firm, his performance, including without limitation as measured by his billable hours, met or exceeded the Firm's reasonable expectations.

17. At no point in his tenure did Mr. Seltzer receive any negative performance reviews regarding his billable work for the Firm's clients.

18. Beginning on or about January 2020, Mr. Seltzer was assigned to handle an arbitration file for Lloyd's of London ("the Client"). In this role he billed the Client for the legal services he provided on the Client's file ("Client File").

19. On or about January 2020, the Firm also assigned Mr. Jacob to the Client's arbitration file. Mr. Jacob billed the Client for the legal services he provided in accordance with the Firm's billing guidelines.

20. Thereafter, consistent with the Firm's practice, Mr. Seltzer accessed the Firm's billing software with the intent of entering his billable hours into the Firm's draft bill for attorney fees rendered on the Client File ("Pre-Bill").

21. In March 2020, upon viewing the Pre-Bill, Mr. Seltzer discovered what he suspected to be blatant inaccuracies and possibly an attempt to bill the Client fraudulently. Specifically, the Pre-Bill indicated that a non-equity partner at the Firm, Gabrielle Puchalsky-Elfand, Esq. ("Puchalsky-Elfand"), performed a vast majority of the total hours and tasks on the Client File.

22. The Pre-Bill records concerning Puchalsky-Elfand's performance were contradicted by Mr. Seltzer's first-hand knowledge that he and Mr. Jacob had performed nearly all the work on the Client File, not Puchalsky-Elfand.

**Mr. Jacobs - Facts Concerning Defendants' Unlawful Actions**

23. Mr. Seltzer submitted the Pre-Bill to Mr. Jacob so that Mr. Jacob could review the Pre-Bill for its accuracy before the Firm submits the final bill to the Client for payment.

24. The Client's Pre-Bill memorialized the total number of hours charged, attributing each hour to the Firm employee who completed the associated task, and described the task performed during each hour.

25. Upon review of the Client Pre-Bill, Mr. Jacob discovered what he believed to be inaccuracies. Specifically, Mr. Jacob was seriously concerned that the hours attributed to Puchalsky-Elfand were inaccurate.

26. Mr. Jacob believed that hours attributed to Puchalsky-Elfand were factually impossible as to the tasks detailed and number of hours that were recorded on her behalf.

27. Mr. Jacob was further concerned by the Pre-Bill's reflection that Puchalsky-Elfand performed a vast majority of the total hours and tasks, which contradicted Mr. Jacob's first-hand knowledge that he and Mr. Seltzer had completed nearly all the work on the Client's File, not Puchalsky-Elfand.

28. Mr. Jacob's initially recorded hours were significantly reduced and Puchalsky-Elfand was billing a tremendous number of hours, substantially exceeding the hours Mr. Jacob had initially recorded, and, to Mr. Jacob's first-hand knowledge, the total hours performed for the Client.

29. On March 31, 2020, Mr. Jacob emailed Defendant John Clark, Esq., the sole managing member ("Managing Member") regarding concerns of unethical attorney behavior in violation of the New York Professional Rules of Conduct.

30. In the March 31, 2020 email, Mr. Jacob stated that he was "reaching out to share

a few concerns regarding certain billing adjustments and entries made in the Client's case" that he believed "may raise ethical concerns." The email further stated that "I am sharing these concerns with full understanding of the serious implications that they carry. That being said, my ethical obligations as an attorney compelled me to bring them to your attention. I am confident that any issue will be resolved before a final bill is issued to the client."

31. In response to said email, Defendant Terri Ferrante, a paralegal and Chief Operating Officer ("COO"), telephoned Mr. Jacob. On said call, the Managing Member informed Mr. Jacob that the Firm would investigate Mr. Jacob's concerns of inaccurate or fraudulent billing and directed Mr. Jacob to send an email to the Managing Member detailing the inaccuracies in the Pre-Bill.

32. On or about April 3, 2020, Mr. Jacob sent an email to the Managing Member explaining in great detail the inaccuracies within the Pre-Bill.

33. On or about April 13, 2020, upon returning to work after the Holidays, Mr. Jacob discovered that he was no longer able to access billing records through the Firm's billing software. The Firm had restricted his access.

34. On or about April 14, 2020, the day after Mr. Jacob discovered that he was unable to view the billing folders, Puchalsky-Elfand then for the first time assigned a task to Mr. Jacob on the Client File – to report on the status of the Client File, however, this time, the Firm had restricted his access to view the billing records.

35. Mr. Jacob was greatly worried that if he continued to work on the subject account without access to its billing folder, he would be complicit in what he suspected may be inaccurate or fraudulent billing.

36. As such, Mr. Jacob emailed the Defendant COO reiterating his concern of unethical attorney conduct in specific detail.

37. The next day on April 15, 2020, the Managing Member sent a firm-wide email, in which he underscored the benefits of "firm loyalty."

38. The following day on April 16, 2020, the Defendant COO and Patrick J. Reilly, Esq., another non-equity partner at the Firm, conference-telephoned Mr. Jacob. During this call, the COO informed Mr. Jacob that the Firm completed an investigation of Mr. Jacob's report of suspected unethical attorney conduct, and "concluded the allegations have no merit" and "as a result of our findings, we believe you're not a good fit with Clark & Fox, and therefore we decided to terminate your employment immediately for insubordination."

39. Following Mr. Jacob's termination, he discovered that his personal email account had been remotely accessed and that the data stored within was tampered with and/or deleted.

40. The Firm terminated Mr. Jacob's employment in retaliation for effort to report legitimate concerns and seeking a proper manner to ensure these concerns were addressed pursuant to Rule of Professional Conduct 8.3(a), and/or in order to prevent or discourage this Plaintiff from making any such attempts now or in the future.

41. The Firm unlawfully terminated Mr. Jacob as a direct result of his effort to report activity to the Firm that he believed in good-faith constituted unethical attorney conduct.

42. The Firm terminated Mr. Jacob's employment in retaliation for Mr. Jacob's impetus to comply with the ethical standards of the profession, and/or to discourage and prevent Mr. Jacob's attempts at compliance with the ethical standards of the legal profession.

**Mr. Seltzer - Facts Concerning Defendants' Unlawful Actions**

43. In late March 2020, after having sent the Pre-Bill for review to Mr. Jacob, and Mr. Jacob identifying the extent of the Pre-Bill inaccuracies, Mr. Seltzer emailed Defendant Managing Member with a request to speak regarding his concerns of inaccurate and possible fraudulent billing by the Firm and Puchalsky-Elfand.

44. Mr. Seltzer's email prompted a telephone conversation between Mr. Seltzer and the Managing Member. During this conversation, Mr. Seltzer explained to the Managing Member the billing inaccuracies in great detail. Further, he emphasized that Puchalsky-Elfand intended to bill the Client for approximately $60,000 of legal services that she did not perform. In response, the Managing Member stated that "I [the Managing Member] would look into it."

45. The Firm never provided a response to Mr. Seltzer on his report of unethical billing, and instead, from late March through early April 2020, he received multiple requests from the COO demanding that he finalize billing hours for the Client File Pre-Bill so the Firm could submit its invoice to the Client for payment.

46. On April 7, 2020, Mr. Seltzer sent an email to the COO and Managing Member, reiterating his reluctance to engage in conduct that could be viewed as complicit:

> "[Y]ou have continued to ask me to enter time where I believe doing so would raise an appearance of impropriety concerning the same fraudulent billing practices I reported last week. As an officer of the court, I do not believe I can lawfully comply with the firm's request until this issue has been resolved, resulting in the firm's apparent decision to withhold pay from me

> and me alone . . .
>
> I've gone above and beyond for years and only want to do my job, but I can't do so if I'm left in the dark or instructed to enter timekeeping charges on matters where my ability to even review invoices for accuracy is being denied. Needless to say, leveraging me in a situation where mere compliance with my reporting obligations is met with hostility is causing me enormous stress . . .
>
> There is a path forward that doesn't require stigmatizing those who have always gone above and beyond to build the firm's practice and reputation, and service the needs of its clients. Someone who only wants to be able to continue to do so."

47. During the early morning hours of April 8, 2020, Mr. Seltzer received an unprompted and ominous email from the Defendant Managing Member in which the Managing member stated that Mr. Seltzer cannot prove anything and doesn't have any evidence.

48. Shortly after, Mr. Seltzer discovered that his personal laptop, personal tablet, and personal smartphone (collectively "Computer Systems") had been remotely accessed and that the data stored within was tampered with and/or deleted. The deleted and tampered data included stored emails and other electronically stored communications.

49. In response, Mr. Seltzer contacted the Firm's computer network cloud service

provider and was informed that the COO directed they access and wipe all data from Mr. Seltzer's personal Computer Systems.

50. On April 8, 2020, the Firm sends an email to all employees but not Mr. Seltzer stating that Mr. Seltzer was "no longer working with the firm."

51. The Firm unlawfully terminated Mr. Seltzer as a direct result of his decision to report activity to the Firm that he believed in good-faith may constitute unethical attorney conduct.

52. Mr. Seltzer was terminated as a result of his refusal to accede to Defendants' direction that he engage in unethical billing conduct, in retaliation for his attempts to report his concerns and determine the proper manner to ensure these concerns were addressed pursuant to Rule of Professional Conduct 8.3(a), and/or in order to prevent or discourage Plaintiff from making any such attempts at the time or in the future.

**First Count**
**VIOLATIONS OF STORED COMMUNICATIONS ACT**
**Against All Defendants**

53. Defendants' access of Plaintiffs' computer systems constituted violations of the Stored Communications Act 18 U.S.C. § 2701, because Defendants accessed Plaintiffs' electronic facilities that provide electronic communication services and exceeding Defendants authorization, altered and/or prevented access to data and electronic communications.

54. Pursuant to 18 U.S.C. § 2707, Plaintiffs' are entitled to equitable relief, compensatory damages, reasonable attorney's fees and other litigation costs.

55. As a direct and proximate result of Defendants' misconduct described herein,

Plaintiffs' have suffered monetary damages.

**Second Count**
**VIOLATIONS OF THE COMPUTER FRAUD AND ABUSE ACT**
**Against All Defendants**

56. Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs as if the same were fully set forth herein.

57. Plaintiffs' computer systems were "protected computers" under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(e)(2).

58. The Defendants each among them aided and abetted to perpetuate control over and destruct Plaintiffs' Computer Systems.

59. Defendants electronically seized and damaged Plaintiffs' computer systems wholly without their authorization and otherwise entirely exceeding their authorized access.

60. By their wrongful intentional actions, Defendants accessed Plaintiffs' protected Computer Systems without their authorization and otherwise in excess of their authorized access, and thereby obtained and utilized information for the purposes of destroying or attempting to destroy emails, alter or delete data, all for the purpose of engaging in unfair competition, and/or to prevent or discourage Plaintiffs' attempts at compliance with the ethical standards of the legal profession.

61. The wrongful actions of Defendants have caused loss to Plaintiffs that exceeds $5,000 in any one-year period in that Plaintiffs suffered a loss of more than $5,000 as a result of Defendants' conduct.

**Third Count**
**FOR RESPONDEAT SUPERIOR LIABILITY UNDER THE STORED COMMUNICATIONS ACT AND THE COMPUTER FRAUD AND ABUSE ACT**
**Against the Firm**

62. Plaintiffs repeat and re-allege each and every allegation in the foregoing counts as if the same were fully set forth herein.

63. At all times pertinent hereto, Defendants John M. Clark, Esq. and Terri Ferrante were acting within the scope of their employment.

64. That the aforesaid counts occurred due to the recklessness, carelessness and negligence of the Defendants herein, and/or their principal(s), owner(s), agent(s), servant(s) and/or employees.

65. Defendant Clark Associates LLC dba "Clark & Fox", as employer of Co-Defendants John M. Clark and Terri Ferrante, is vicariously liable under the liability principles of respondeat superior, for acts committed by their principal(s), owner(s), agent(s), servant(s) and/or employees.

**Fourth Count**
**BREACH OF IMPLIED CONTRACT**
**Against the Firm**

66. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this Complaint.

67. Pursuant to the holding in *Wieder v. Skala*, 80 N.Y.2d 628 (Ct. of Appeals 1992) and its progeny, the terms of Plaintiffs' employment contained an implied-in-law obligation that both Plaintiffs and the Firm would act in accordance with the ethical standards of the legal profession.

68. The implied-in-law obligation set forth in *Wieder* prohibited the Firm from taking

adverse employment actions in retaliation for Plaintiffs' insistence on compliance with the ethical standards of the profession and/or to prevent or discourage Plaintiffs' attempts at compliance with the ethical standards of the legal profession.

69. RPC 8.3(a) provides that "[a] lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer shall report such knowledge to a tribunal or other authority empowered to investigate or act upon such violation." See also RPC 5.1(a) ("A law firm shall make reasonable efforts to ensure that all lawyers in the firm conform to these Rules.").

70. Plaintiffs are not required to prove an actual underlying ethical violation or that they were, in fact, under an obligation to report unethical conduct. Instead, and borrowing from the framework applicable to analogous retaliation claims under federal law, a plaintiff establishes a prima facie case under *Wieder* by demonstrating that he reported, attempted to report, or threatened to report suspected unethical behavior and that he suffered an adverse employment action under circumstances giving rise to an inference of retaliation. It is immaterial whether, with the benefit of hindsight, the underlying suspected unethical conduct may not amount to a violation of the disciplinary rules. *Joffe v. King & Spalding LLP*, 2019 U.S. Dist. LEXIS 163671, (S.D.N.Y. September 24, 2019).

71. In retaliation for Plaintiffs' insistence on compliance with the ethical standards of the profession and/or in order to prevent or discourage Plaintiffs' compliance with the duty to report potential ethical breaches, the Firm terminated Plaintiffs' employment, and in doing so breached the implied-in-law obligation set forth in *Wieder*.

72. As a direct, proximate and foreseeable consequence of Plaintiffs' termination,

which constituted a breach of implied contract, Plaintiffs sustained damages, including, without limitation, economic injuries and other direct and consequential damages.

**Fifth Count**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**NYS Common Law, Against Defendants Managing Member and COO**

73. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint as if more fully set forth herein.

74. In doing the acts alleged, Defendant Managing Member and Defendant COO thereby caused Plaintiffs emotional distress.

75. Defendant Managing Member and Defendant COO's behavior was reckless, wanton and otherwise intentionally extreme and outrageous to such extent that the action was atrocious and intolerable in a civilized society and legal profession.

76. The conduct was so outrageous in character and extreme in degree as to go beyond all possible bounds of decency.

77. Plaintiffs suffered humiliation, mental anguish, and emotional and physical distress.

78. Defendant Managing Member and Defendant COO caused Plaintiffs to suffer numerous injuries as set forth herein.

79. The Defendants' breach of their duties to Plaintiffs caused Plaintiffs to suffer numerous injuries as set forth herein.

80. As a result of this Defendant's acts, Plaintiff has been damaged in an amount to be determined at the time of trial.

**Relief**

WHEREFORE, Plaintiffs respectfully demand against Defendants recovery on each of the foregoing counts:

(a) Compensatory damages in an amount to be determined at trial for all damages including but not limited to economic damages for property destruction, loss of past back pay, future front pay wages, attendant benefits, and non-economic damages for humiliation, pain and suffering and emotional distress sustained;

(b) Statutory fees, awards, interest on judgment and costs, including their reasonable attorney's fees to the fullest extent permitted by law; and

(c) Such other and further relief as this Court deems necessary and proper.

**Jury Demand**

Plaintiffs request a jury trial on all issues to be tried.

Dated: New York, New York
June 18, 2020

David DeToffol

DeTOFFOL & ASSOCIATES, Attorneys at Law
125 Maiden Lane – Suite 5C
New York, New York 10038
Tel. (212) 962-2220
Attorneys for Plaintiff