UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                  :

JOSHUA SELTZER and AARON JACOB,     :    **ORDER DENYING MOTION TO**
                  :    **COMPEL ARIBTRATION**

            Plaintiffs,   :

                  :    20 Civ. 4685 (AKH)

     v.               :

                  :

CLARK ASSOCIATES, LLC d/b/a/ "CLARK & :
FOX," JOHN M. CLARK, and TERRI :
FERRANTE,                  :

                  :

           Defendants.  :

                  :

------------------------------------------------------------- X

ALVIN K. HELLERSTEIN, U.S.D.J.:

          Plaintiffs Joshua Seltzer and Aaron Jacob commenced this suit in June 2020,

alleging principally that they were wrongfully terminated by Defendants Clark Associates, LLC

d/b/a/ "Clark & Fox" ("Clark & Fox"), John M. Clark, and Terri Ferrante——a law firm at which

Plaintiffs used to work; a firm operated by Clark and Ferrante——in violation of the implied duty

of law firms against "[e]recting or countenancing disincentives to compliance with the applicable

rules of professional conduct," *Wieder v. Skala*, 80 N.Y.2d 628, 636-37 (1992).  Am. Complaint,

ECF No. 9.  Plaintiffs also contend that Defendants violated the Computer Fraud and Abuse Act

and Stored Communications Act, *see* 18 U.S.C. §§ 1030(a)(2)(C), 2701,[1] by accessing Plaintiffs'

computer systems without proper authorization.  *See id.*

          In short, Plaintiffs claim that they discovered what they believed to be another

employee of Clark & Fox fraudulently over-billing a client, reported their discovery to Clark and

Ferrante, and were, in retaliation, terminated for "insubordination."  *See id*. at ¶¶ 23-52.  Around

---

[1] With this matter lacking complete diversity among the parties, *see* Compl. at ¶¶ 1-7, Plaintiffs predicate subject-matter jurisdiction on federal question jurisdiction, *see* 28 U.S.C. § 1331, anchoring the case with the two federal law allegations——the Computer Fraud and Abuse Act and Stored Communication Act——and sweeping in their *Wieder* claim by way of supplemental jurisdiction, *see* 28 U.S.C. § 1367.  *See* Compl. at ¶ 8.

this time, according to Plaintiffs, Plaintiffs determined that both of their personal email accounts had been remotely accessed and tampered with by Defendants, *e.g.*, large quantities of data had been actively deleted.  *See id*. at ¶¶ 39, 48-49.

Now before me are two related motions.  First, Defendants move to compel Plaintiffs to arbitrate these serious allegations.  *See* Mtn. to Compel and Dismiss, ECF No. 16. Defendants argue that Plaintiffs signed arbitration agreements covered by the Federal Arbitration Act ("FAA"), *see* 9 U.S.C. §§ 2, 4, which require them to arbitrate, rather than litigate, their case. *See* Def. Mem., ECF No. 17.  Second, responding to an arbitration demand served by Defendants on July 29, 2020 arising out of the same facts that precipitated Plaintiffs' litigation here, *see* Def. Arbitration Demand, ECF No. 26-1, Plaintiffs move to stay Defendants' arbitration pending this Court's decision on Defendants' motion to compel arbitration, *see* Mtn. to Stay, ECF No. 25; Pl. Mtn. to Stay Mem., ECF No. 26.

For the reasons that follow, I hold that the operative documents do not constitute an enforceable agreement to arbitrate.  Accordingly, Defendants' motion to compel arbitration is denied and Plaintiffs are not required to continue defending themselves in the arbitral forum.

## Discussion

A. Legal Principles

The FAA mandates that arbitration clauses in commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  And in the event of a "refusal … to arbitrate under a written agreement for arbitration," the party "aggrieved by the alleged failure" to arbitrate "may petition any United States district court … for an order directing that such arbitration proceed in the manner provided."  *Id*. at § 4.  If "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court *shall* make an order directing the parties to proceed to arbitration."  *Id*. (emphasis added); *see also Daly v. Citigroup*, 939 F.3d 415, 421

(2d Cir. 2019) ("'By its terms, the FAA leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'") (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)) (alterations omitted) (emphasis in *Byrd*), *cert. denied*, 140 S. Ct. 1117 (2020).

In "reviewing a motion to compel arbitration," courts must determine: "(1) 'whether the parties agreed to arbitrate'; (2) 'the scope of that agreement'; and, (3) 'if federal statutory claims are asserted, … whether Congress intended those claims to be nonarbitrable.'" *Daly*, 939 F.3d at 421 (quoting *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987). And "[i]n accordance with the strong federal policy favoring arbitration as an alternative means of dispute resolution," courts are to "resolve any doubts concerning the scope of arbitrable issues in favor of arbitrability." *Id*. (quotation marks omitted). Motions to compel arbitration are to be considered similarly to motions for summary judgment, with the operative question being whether a genuine dispute of material fact exists that precludes granting judgment as a matter of law. *See Thomas v. Public Storage, Inc.*, 957 F.Supp.2d 496, 499 (S.D.N.Y. 2013).

The question of "whether an agreement to arbitrate exists between the parties is governed by state contract law." *Meeg v. Heights Casino*, No. 17 Civ. 4059, 2020 WL 1493658, at *3 (E.D.N.Y. Mar. 27, 2020) (citing to *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 74 (2d Cir. 2017)).[2] Under "New York law, to create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Id*. (quotation marks and alterations omitted). The "FAA does not require parties to arbitrate when they have not agreed to do so." *Volt Info. Scis., Inc. v. Bd. of Trustees of*

---

[2] The parties disagree as to whether New York or New Jersey contract law should be applied. I need not resolve this dispute. Even if I were to side with Defendant's claim that New York law governs——which Defendants suggest has a lower bar for "assent" to arbitrate than the law of other jurisdictions, *see* Def. Mem. at 9——I would find that there is insufficient evidence of agreement to arbitrate here. I therefore apply New York law purely for argument's sake.

*Leland Stanford Junior University*, 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).

As such, "the FAA's presumption of arbitrability does not apply to the threshold issue of whether

the parties entered into a binding agreement to arbitrate in the first instance." *Benihana of*

*Tokyo, LLC v. Benihana Inc.*, 73 F.Supp.3d 238, 248 (S.D.N.Y. 2014).

      B. The Relevant Arbitration Documents

        The very first page of Clark & Fox's operative Employee Handbook provides the

following cautionary language:

> The policies outlined in this Employee Handbook should be regarded as management guidelines only, which in a developing business will require changes from time to time….
>
> Except for the policy of at-will employment, the firm reserves the right to revise, delete and add to the provisions of this Employee Handbook at any time without further notice….
>
> The provisions of this Employee Handbook are *not intended to create contractual obligations* with respect to *any* matters it covers.

Employee Handbook, ECF No. 18-8, at 12[3] (emphases added).  Later, the Handbook reviews the

contours of the firm policy on arbitration:

> The arbitration program covers all employment-related disputes, including, but not limited to, all claims arising under local, state or federal statutes, such as Title VII of the Civil Rights Act of 1964 as amended ("Title VII"); the Age Discrimination in Employment Act of 1967 ("ADEA") as amended by the Older Workers Benefit Protection Act ("OWBPA"); the Americans with Disabilities Act ("ADA"); the Family and Medical Leave Act ("FMLA"); discrimination claims (including, but not limited to, claims related to race, color, religious creed, sex, national origin, ancestry, age, marital status, handicap disability, sexual preference/orientation, and/or genetic information); breach of contract claims; tort claims; defamation claims; claims of retaliation; claims for benefits; claims of wrongful discharge or termination; public policy claims; and claims relating to employee's hire, employment or termination.
>
> For such a dispute to be property pursued (by either an employee or Clark & Fox), it must be initiated within the applicable statute of limitations of the specific local, state or federal law at issue, by the filing of a Request for Arbitration … and by

---

[3] Because the numbers of the Employee Handbook start anew in each section (*i.e.*, there are multiple pages denoted "Page 1"), I use the ECF pagination.

contemporaneously delivering a copy of the same Request to Clark & Fox (if initiated by an employee) or to the employee (if initiated by Clark & Fox). Clark & Fox and the employee shall select an arbitrator in accordance with the rules and procedures established by the AAA.

*Id*. at 26-27.  Both Jacob and Seltzer signed acknowledgment forms attesting to the following:

This is to acknowledge that I have received a copy of the Clark & Fox Employee Handbook and I understand that it contains information about the employment policies and practices of the firm.  I agree to read and comply with this Employee Handbook.  I understand that the policies outlined in this Employee Handbook are *management guidelines only*, which in a developing business will require changes from time to time….

I understand that except for the policy of at-will employment, the firm reserves the right to revise, delete and add to the provisions of this Employee Handbook at any time without further notice….

I understand that this Employee Handbook *is not intended to create contractual obligations* with respect to *any* matters it covers…

*Id*. at 137 (emphases added); *see* Jacob Acknowledgment of Receipt, ECF No. 18-14; Seltzer

Acknowledgment of Receipt, ECF No. 18-10.

      C. <u>Motion to Compel Arbitration</u>

      The Employee Handbook makes quite clear that the parties did not mutually agree to enter into a binding arbitration agreement.  As reflected in the quotations *supra*, the Handbook expressly disavows that it creates contractual rights or duties; self-describes as "guidelines only"; and reserves to Clark & Fox the right to unilaterally alter the Handbook at any time, and without any notice.  If that were not clear enough, the acknowledgments signed by Plaintiffs repeat these many limitations.  As several courts in this Circuit have noted, an employer cannot rely on the very same terms to snatch away employees' contractual rights with one hand while imposing asymmetric contractual duties with the other.  *See Meeg*, 2020 WL 1493658, at \*3-4; *U.S. ex rel. Harris v. EPS, Inc.*, No. 05 Civ. 212, 2006 WL 1348173, at \*5 (D. Vt. May 16, 2006) ("Having inserted these disclaimers in an apparent effort to avoid vesting [the employee] with contractual

*rights*, [the employer] cannot conveniently choose to ignore them and argue that the Handbook imposes contractual *obligations*…").

Defendants respond by shepherding a number of decisions that have enforced arbitration requirements in employee handbooks and/or found intent of an agreement to arbitrate even when the handbook at issue disclaimed creating contractual rights. *See* Def. Mem. at 8-9, 9 n. 5. But the only cases that granted motions to compel arbitration despite language disclaiming the creation of contract rights[4] involved arbitration provisions that specified that compliance with the arbitration policy was a *condition of employment. See*, *e.g.*, *Patterson v. Raymours Furniture Co., Inc.*, 96 F.Supp.3d 71, 76 (S.D.N.Y. 2015) ("Here the [arbitration provision] clearly states: 'This Program is an essential element of your continued employment relationship with Raymour & Flanigan and is a condition of your employment.'"); *Curry v. Volt Info. Scis., Inc.*, No. 07 Civ. 7158, 2008 WL 719214, at *1 (S.D.N.Y. Mar. 18, 2008) (the employee handbook provided that, "Arbitration is an essential element of your employment relationship with Volt and is a condition of your employment"); *Brown v. St. Paul Travelers Companies, Inc.*, 331 F. App'x 68, 69-70 (2d Cir. 2009) (employer executive emailed all employees that "abiding by" the company arbitration policy "was an 'express condition' of continuing employment"); *Graham v. Command Security Corp.*, 46 Misc. 3d 1224(A), 13 N.Y.S.3d 850 (N.Y. Sup. 2014) (employer sent email advising all employees that agreeing to the arbitration policy "'was an express condition' of continuing

---

[4] A number of cases Defendants cite involved acknowledgments to having read and agreed to employee handbooks that expressly gave rise to contractual rights. *See*, *e.g.*, *Litvinov v. UnitedHealth Grp. Inc.*, No. 13 Civ. 8541, 2014 WL 1054394, at *2 (S.D.N.Y. Mar. 11, 2014) (employee's offer letter described the arbitration policy as follows: "The Policy is a binding contract between you and [employer] to resolve all employment-related disputes … through binding arbitration. Your agreement to be bound by the terms of the Policy is a condition of your employment."); *McKay v. Wilson*, 121 A.D.3d 564, 993 N.Y.S.2d 903, 904 (2014) ("Among the policies clearly set forth was the requirement that plaintiff arbitrate all claims or causes of action against the firm through a mandatory dispute resolution program.").

employment").[5]  By contrast, the Handbook here did not notify employees that foregoing the

right to bring suit in court amounted to a condition of employment.[6]

What's more, Clark & Fox opted in the Handbook to elevate *other* firm policies to

conditions of employment, *see* Employee Handbook at 25 ("Each new employee, as a condition

of employment, must complete the … Form I-9…"); *id*. at 135 ("Your employment or continued

employment with the firm is conditioned upon your full compliance with the foregoing substance

abuse policy…"), which would lead a reasonable employee to suspect that the omission of any

comparable language in the arbitration provision was more than a coincidence.  *Cf. Patterson v.*

*Tenet Healthcare, Inc.*, 113 F.3d 832, 835 (8th Cir. 1997) (taking note of the "difference in

language used in the handbook [generally] and that employed in the arbitration clause," in

evaluating the enforceability of an arbitration provision).

In sum, the Handbook, which both renounces contractual effect and lacks any

indication that agreeing to arbitrate is a condition of employment, does not create an enforceable

contract restricting Plaintiffs to arbitration.  *See Isaacs v. OCE Bus. Servs., Inc.*, 968 F.Supp.2d

---

[5] Defendants' reply brief tacks on several more cases, all of which are inapposite.  For example, Defendants refer to *Dhaliwal v. Mallinckrodt*, No. 18 Civ. 3146, 2019 WL 4739045 (S.D.N.Y. Sept. 29, 2019) for the proposition that it matters not whether "compliance with arbitration provision [sic] was a condition of the plaintiff's employment or … the handbook itself constitute[s] a contract," Def. Reply Mem., ECF No. 27, at 4, but the plaintiff in *Dhaliwal* only challenged the arbitration provision on the grounds that (a) she did not remember receiving it, and (b) the agreement could not be enforced by the company that had acquired her employer—there was no discussion whatsoever of the provision being a condition of employment or distinctly mandatory because these issues were not raised.  Moreover, the *Dhaliwal* provision appears to have affirmatively described the arbitration provision as "binding."  *See Dhaliwal*, 2019 WL 4739045, at *2 ("The Employee Handbook explains that Questcor's 'Dispute Resolution Process through *mutual binding arbitration* applies to [Questcor] and to all employees of Questcor.") (emphasis added).  For another example, Defendants cite *Teah v. Macy's Inc.*, No. 11 Civ. 1356, 2011 WL 6838151 (E.D.N.Y. Dec. 29, 2011), for the proposition that Plaintiffs' signed acknowledgments here are enough to bind them to arbitrate, but *Teah* involved a wholly different issue: whether the employee's failure to opt out of otherwise binding arbitration was sufficient to bind him to arbitrate.  *Id*. at *5 ("Teah electronically signed a document at the commencement of his employment stating that he agreed to be bound by the arbitration provision unless he opted out within 30 days.").

[6] In their reply, Defendants urge for the first time that agreeing to arbitrate all disputes *was* a condition of Plaintiffs' employment.  Def. Reply Mem. at 6.  I am unconvinced.  Defendants' only evidence is an email from Clark & Fox's CEO (sent only to one of the two Plaintiffs) sending out the Handbook, which states that "employees are required to read the [Handbook]" and sign a form acknowledging receipt.  *See id*. at 6.  This puts the cart before the horse.  The question is not whether Plaintiffs' both read the Handbook and acknowledged having done so, but what the terms of the Handbook and acknowledgments actually say.

564, 571 (S.D.N.Y. 2013) ("An arbitration agreement included in an employee handbook with language providing that the handbook does not constitute a contract of employment or that the arbitration policy may be amended is enforceable when the language of the arbitration agreement is distinct and mandatory and when the employee is advised of the policy and that *compliance with it is a condition of employment*.") (quotation marks and alterations omitted) (emphasis added); *see also Sherry v. Sisters of Charity Med. Cen.*, No. 98 Civ. 6151, 1999 WL 287738, at *5 (E.D.N.Y. May 4, 1999) ("[T]he language … does not indicate that as a condition of employment, employees agree to submit disputes to arbitration.").[7]

D. Motion to Stay Arbitration

Plaintiffs move to stay the arbitration initiated by Defendants on the grounds that they "are not subject to the … arbitration clause."  Pl. Mtn. to Stay Mem. at 3-4.  Defendants, for their part, counter that, "[e]ven if this Court were to determine that the provision is not valid and enforceable as to Plaintiffs, there is no legal authority that precludes Defendants from proceeding in arbitration against the former employees."  Def. Opp. to Mtn. to Stay Mem., ECF No. 28, at 2. I agree with Plaintiffs.

This is not a case in which the arbitration provision at issue is enforceable but gives both parties the *option* (rather than obligation) to arbitrate.  In that scenario, *neither* party can be forced to pursue its own claims in arbitration, but *either* party can be compelled to defend arbitration claims brought by the other.  *See*, *e.g.*, *Benihana of Tokyo, LLC v. Benihana Inc.*, 73 F.Supp.3d 238, 250 (S.D.N.Y. 2014).  Here, the problem for Defendants is that the arbitration

---

[7] To the extent one might interpret (a) the arbitration section being titled "Mandatory" and (b) the acknowledgments indicating that Plaintiffs would "comply" with the Handbook, to introduce ambiguity, this ambiguity would still not get Defendants where they need to go.  *Meeg*, 2020 WL 1493658, at *5 ("[E]ven if the handbook were ambiguous as to whether the disclaimers against contractual rights and obligations apply to the arbitration provision, Defendants would still come up short.  Because New York contract law requires that the ambiguous language should be construed against the interest of the drafting party, any ambiguity must be resolved to find that the disclaimers apply to the arbitration provision.") (quotation marks and citations omitted).

provision *itself* rules out enforceability.  At most, the Handbook's arbitration provision outlines the protocol by which arbitration may be pursued by either party on consent.[8]

Accordingly, there is no need to stay the arbitration proceedings initiated by Defendants.  Having decided that Plaintiffs are not bound to arbitrate——either their own claims or claims brought by Defendants——I conclude that Plaintiffs have no duty to continue to defend against Defendants' claims in the arbitral forum.

## Conclusion

Defendants' motion to compel arbitration is denied and Plaintiffs are not required to participate in the arbitration commenced by Defendants.  The Clerk is instructed to terminate the open motions (ECF No. 16, 25).  The parties shall appear before me for a status conference on September 25, 2020 at 10:00 a.m., to chart a course for this litigation.


SO ORDERED.

Dated:        September 3, 2020                    _____/s/_____
              New York, New York                       ALVIN K. HELLERSTEIN
                                                       United States District Judge

---

[8] As referenced *supra*, the arbitration provision specifies that for "employment-related disputes" to be "proper[l]y pursued" under the arbitration program, "either an employee or Clark & Fox" must file a claim with the American Arbitration Association.  *See* Employee Handbook at 26-27.